IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORIO GUTIERREZ, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 cv 4152 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| P.A.L., LTD. d/b/a ANGELINO'S, and | ) | |
| PHILIP PASCARELLA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gregorio Gutierrez filed a three-count complaint against defendants P.A.L., Ltd.,

d/b/a Angelino's, and P.A.L.'s president, Philip Pascarella,[1] alleging that they failed to pay him

$8,104.30 for time he worked from June 30 through December 2009, in violation of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the Illinois Minimum Wage Law, 820

Ill. Comp. Stat. 105/12(a), and the Illinois Wage Payment and Collection Act, 820 Ill. Comp.

Stat. 115/2 et seq. The parties have filed cross-motions for summary judgment. For the reasons

explained below, defendants' motion is granted and plaintiff's motion is denied.

## DISCUSSION

A movant is entitled to summary judgment under Rule 56 when the moving papers and

affidavits show there is no genuine issue of material fact and the movant is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing

out the absence of a genuine issue of material fact. Once the moving party has met that burden,

---

[1] According to Pascarella's uncontroverted affidavit, he served as the President of P.A.L. from its formation in 2002 through its involuntary dissolution in November 2010. Pascarella was also the manager of 80 West, LLC, from its formation in 2002 through its involutnary dissolution in January 2010. 80 West owned the premises on which P.A.L. operated Angelino's.

the nonmoving party must go beyond the pleadings and present specific facts showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

The parties agree that, from June 2004 until June 30, 2009, defendant P.A.L. employed plaintiff as a dishwasher at Angelino's restaurant in Mokena, Illinois. Angelino's, which was operated by P.A.L., consisted of a second-floor banquet hall, a first-floor restaurant, and a basement bar and grill. There is no dispute that P.A.L. complied with the FLSA during that time period. The disputed question is whether defendants continued to employ plaintiff from July to December 2009, at which point plaintiff claims that he quit because he had not been paid for the past half year. Defendants reason that plaintiff could not have worked for them after June 30, 2009, when Angelino's ceased operations and all employees were terminated.

According to Pascarella's uncontroverted affidavit, Angelino's stopped operating the first-floor restaurant on January 1, 2009. On that date (according to both Pascarella's affidavit and the retail lease itself), 80 West, LLC entered into a retail lease with Chef Paul's Steak and Chophouse, Inc., under which Chef Paul's was to occupy the first floor of "the building formerly occupied by Angelino's." A January 29, 2009, article published in the Mokena Messenger confirms that Chef Paul's opened for business on the first floor of the Angelino's building on

January 20, and celebrated a grand opening three days later. There is a factual dispute as to

when Angelino's ceased operating the third-floor banquet facility and basement bar, but this

dispute is immaterial.[2] Regardless of when defendants ceased operating the various facilities,

there is no genuine factual dispute over plaintiff's June 30, 2009, termination date.

According to Sanfratello's uncontroverted affidavit, in June 2009 defendant Pascarella

instructed Sanfratello to hold a meeting with all the Angelino's employees to inform them that

they were all being terminated on June 30 because Angelino's was ceasing to operate. It is also

undisputed that, "[a] few weeks before June 30, 2009," Sanfratello in fact conducted that

meeting, that plaintiff attended the meeting, and that Sanfratello reported back to Pascarella that

she had conducted the meeting, at which all employees had been present and informed of their

impeding termination. Defendants also refer to the Employer's Contribution and Wage Reports

they provided to the Illinois Department of Employment Security, which indicate that Gutierrez

was on the payroll through June 2009, after which time the only employee was Sanfratello.

Plaintiff attempts to deny defendant's Local Rule 56.1 statements to this effect, which

cite to Sanfratello's affidavit. But because he lacks controverting evidence, these denials are

ineffective. Plaintiff cites to his declaration, but his declaration does not dispute that Sanfratello

---

[2] Plaintiff points to the January 2009 Mokena Messenger article, which reported that "Angelino's will still operate the banquet facility on the third floor and the sports bar in the basement," and his own declaration stating that defendants continued to operate the banquet facility. Defendants, however, point to the affidavits of Pascarella and Angelino's manager, Elena Sanfratello, who state that Angelino's ceased operating the "2nd floor banquet hall and 1st floor full service restaurant as of January 1, 2009, when Chef Paul's began its operation," and that another establishment, Bella N Blue, took over the basement bar facility on July 1, 2009. Plaintiff agrees that Bella N Blue began operating the basement bar on July 1, but because 80 West, LLC (not defendants) continued to hold the liquor license for the basement bar until September 2009, plaintiff claims that defendants were also participating in operating Bella N Blue.

terminated plaintiff effective June 30, 2009. His declaration states only that he "was never told that his job was being transferred to another company" that he "was never provided with any written materials stating that [P.A.L.] had ceased operations," and that "[d]efendants continued to operate the banquet facility throughout the time Plaintiff worked on the premises." As defendants point out, they were under no obligation to provide plaintiff with written documentation of his termination, and they do not claim that he was "transferred"—they claim that he was terminated. Further, that defendants continued to operate the banquet facility when plaintiff worked in the building is not inconsistent with defendants' evidence that plaintiff was terminated at the same time they stopped operating the banquet hall. Notably, plaintiff does not attach a specific date to that statement.

Plaintiff also contends that defendants' Illinois tax returns, showing that P.A.L. generated income in the second half of 2009, demonstrate that he was not terminated on June 30. But it is irrelevant whether P.A.L.'s tax returns reflect that it generated income during that period, because it remains uncontroverted that plaintiff had been terminated effective June 30, 2009. Similarly, plaintiff points to a printout of the software-based time clock that defendants used to track the hours employees worked, which shows that he clocked in and out on a number of occasions from June 30 through December 2009. But plaintiff has offered nothing to contradict defendants' evidence that after Angelino's ceased operating on June 30, Bella N Blue used the software time clock for the rest of 2009, and that Bella N Blue's August 2009 commercial lease indicated that it assumed the use and care of the computer system containing the software-based time clock. Thus, the fact that plaintiff logged time using that software indicates not that he was working for defendants, but rather that he was employed by Bella N Blue.

4

Finally, plaintiff claims that defendants have presented inconsistent evidence regarding when he received his final check. Specifically, plaintiff states that defendants' response to his interrogatories and Sanfratello's affidavit are in disagreement, but that is inaccurate. Defendants' answer to plaintiff's interrogatories states that Sanfratello personally delivered final paychecks to employees on June 30, and Sanfratello's affidavit reports that "[o]n or about June 30, 2009, [she] distributed final paychecks to all Angelinos employees, including [plaintiff]." Even if plaintiff were correct—which he is not—that these are inconsistent, it is immaterial whether he received his final check on June 30, as all of defendants' evidence indicates, or in early July, as plaintiff argues but fails to support with any evidence.[3]

Plaintiff proceeds to argue that, even if defendants terminated him in June 2009, he remained employed for purposes of the FLSA because defendants permitted him to continue to perform work for their benefit. 29 U.S.C. § 203(g) ("[To e]mploy includes to suffer or permit to work."); see Sec'y of Labor v. Lauritzen, 835 F.2d 1529, 1534 (7th Cir. 1987). Plaintiff claims that he remained responsible for clearing and setting up the banquet hall and washing dishes after banquet hall events, but even assuming this to be true, it is undisputed that after June 30, 2009, Bella N Blue controlled plaintiff. Because no evidence supports plaintiff's claim that he was working for defendants, rather than for Bella N Blue, summary judgment is appropriate for defendants on plaintiff's FLSA claim.

Plaintiff attempts to avoid that conclusion by arguing that "[i]f [Angelino's] could purchase alcohol, generate income, [and] pay taxes, it could surely exercise its obligation under

---

[3] Plaintiff also contends that there is a dispute over how he received the check—in cash or check form—but this is also irrelevant.

the FLSA to inform plaintiff that it no longer wanted his work," but the undisputed facts demonstrate that defendants did exactly that by unambiguously informing plaintiff that he was terminated as of June 30, 2009.

Because the undisputed facts show that defendants terminated plaintiff effective June 30, 2009, and that plaintiff therefore was not employed by defendants after that date, plaintiff cannot recover on his FLSA claim. Although the motions do not purport to request partial summary judgment, both parties have addressed only the FLSA claim, neglecting to explicitly address plaintiff's state-law claims. In light of the undisputed facts, however, the court finds that summary judgment is also appropriate for defendants on plaintiff's claims under the Illinois Wage Payment and Collection Act, which imposes obligations on employers, and the Illinois Minimum Wage Act, which requires that plaintiff did not receive wages to which he was entitled.

## CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.


**ENTER:** **April 25, 2012**


_____

**Robert W. Gettleman**
**United States District Judge**

6